(No. 47034 )

*In re* DONALD LAMB, a Minor.—(The People of the State of Illinois, Appellee, v. Donald Lamb, Appellant.)

*Opinion filed September 26, 1975.*

GOLDENHERSH, SCHAEFER, and WARD, JJ., dissenting.

James J. Doherty, Public Defender, of Chicago (John Thomas Moran and Kathryn J. Kuhlen, Assistant Public Defenders, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Colon and Marcia B. Orr,

Assistant State's Attorneys, and John J. Verscaj (law student), of counsel), for the People.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Following an adjudicatory hearing in the juvenile division of the circuit court of Cook County which established his commission of the offense of murder (Ill. Rev. Stat. 1971, ch. 38, par. 9—1(a)(2)), respondent, Donald Lamb, 16 years of age, was adjudicated a delinquent minor (Ill. Rev. Stat. 1971, ch. 37, par. 702—2) and committed to the Department of Corrections, Juvenile Division. The Appellate Court for the First District affirmed (21 Ill. App. 3d 827), and we granted leave to appeal.

Oral and written statements made by respondent while in police custody were the only evidence directly implicating him in the killing. After a pretrial hearing, his motion to suppress these statements was denied by the trial court. Respondent argues here that the statements were improperly admitted into evidence because: (1) they were the fruits of an illegal arrest; (2) they were involuntary, having been obtained by physical and mental coercion; and (3) the State failed to produce or explain the absence of all material witnesses to the statements.

Respondent was taken into custody at approximately 8 p.m. on the evening of May 25, 1972, by Officers Soil and Blackley of the Chicago Police Department, who were investigating the murder of Benny Ruffin. The officers acted on the basis of information, not disclosed by this record, provided by the day-watch officers who were working with them on the case. Officers Soil and Hensley testified that upon arrival at the Maxwell Street police station, respondent was placed in a small interrogation room and questioned for a short time by them. One of respondent's wrists was then handcuffed to the wall of the room, and he was left sitting in a chair until 7:30 the next

morning. According to respondent, during his initial interrogation that evening and after he had denied any knowledge of Ruffin's murder, a police officer handcuffed him and hung him by the handcuffs over a window bar in the room so that he was on his tiptoes, leaving him in that position for about one-half hour. When taken down, he was questioned further by Officer Soil and left in the chair all night. He was not questioned or disturbed during the night and was able to sleep off and on. It is uncertain which officer is alleged to have hung him over the window bar since respondent stated on direct examination that it was done by Soil's partner but on cross-examination indicated that it was done by Soil. Soil and Hensley testified that respondent was not mistreated; Blackley did not testify.

At 7:30 a.m. on the morning of the 26th, an officer asked respondent if he was hungry and brought respondent the Polish sausage and pop he requested. After eating, respondent spent the day with Officers Deloughry and Triggs, who questioned him briefly, then took him to the scene of the murder, where later that morning he orally admitted his participation and explained to the officers the details of the crime. After helping the officers locate one of his accomplices, respondent was taken to 26th Street and California Avenue for questioning by an assistant State's Attorney, and then about 5 p.m. was returned to the interrogation room at the Maxwell Street station. Following further questioning by Officer Hensley, respondent again orally admitted his participation in the crime and agreed to make a written statement. Asked if he was hungry, respondent requested a "Big Mac," fries and pop, which he received about 8 p.m. He had apparently had no other food during the day, although he does not contend that he ever requested food and was refused. His written statement was taken by Assistant State's Attorney Gervasi about 9:45 p.m. on May 26 in the presence of Officers Soil, Hensley and Youth Officer O'Driscoll, court

reporter Stabrawa and respondent's mother, Mrs. Delores Lamb. Respondent contends that he was forced to make the written statement by Officers Hensley and Deloughry, who, after his return to the Maxwell Street station, hung him up again on the window bar, hit him in the stomach three times and threatened to frame him so that a street gang would get him. He said that the handcuffs had caused marks on his wrists but that the marks had disappeared by the time of trial. Officers Hensley and Deloughry denied that respondent had been mistreated or coerced into making the statement. Except for Assistant State's Attorney Gervasi, who was not a witness at the suppression hearing, all those present at the written statement, including respondent's mother, testified that his physical condition was normal.

Commencing prior to his initial interrogation, respondent was repeatedly informed of his constitutional rights by all police officers who questioned him and, in the presence of Mrs. Lamb, by Assistant State's Attorney Gervasi prior to the taking of the written statement. There is no doubt that respondent was given an adequate explanation of his rights, and no reason appears to doubt that he understood and waived them. Respondent made no complaint of mistreatment to the assistant State's Attorney, his mother or anyone else present at the taking of the written statement. He claimed that he had told his mother during the afternoon of the 26th of the mistreatment the previous evening, but she made no mention during her testimony of such a conversation nor was she asked about it. His explanation for this omission was that she had probably forgotten their conversation. The written statement states that respondent had not been beaten or abused by police officers, that he had been fed and given cigarettes, and that the statement was not coerced, but was given because it was the truth. After the reporter typed the statement, respondent read it, made several corrections, initialed each page and signed it at the end.

At 10 p.m. on May 25, approximately two hours after respondent was taken into custody, two police officers had gone to his home and informed his mother that he was in custody. She told them that it was too late to go to the station that night. She called the station on the morning of the 26th and was told she should come down and find out what was happening, but she did not do so until almost 3 p.m. that afternoon. She was allowed to talk with her son at 26th and California and again later at the Maxwell Street station prior to the written statement, although it is not entirely clear whether they were ever afforded complete privacy. She testfied she told him to tell the truth. She was present during the taking of the written statement, but made no mention of any complaints by her son of mistreatment or of anything unusual about her son's condition and verified as accurate a photograph of respondent, herself, and Assistant State's Attorney Gervasi taken just after the written statement and showing nothing abnormal about respondent's physical condition. Transportation from her home to 26th and California and the Maxwell Street station was provided by the police.

Respondent initially contends that his statements were inadmissible as the fruits of an illegal arrest. The legality of that arrest cannot, as earlier noted, be determined from the record since the only information on the issue is the testimony of Officer Soil that he and Blackley picked up respondent on the basis of information left for them by the day-watch officers. The State's failure to present other evidence concerning the arrest obviously resulted from respondent's failure to raise the issue in the trial court. We hold that, in such circumstances, the issue has been waived and cannot be raised for the first time on appeal. (*People v. Nilsson* (1970), 44 Ill.2d 244.) In this situation respondent's argument based on *People v. Brown* (1974), 56 Ill.2d 312, *rev'd, Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, is inapposite.

"The determination of the question whether or not a confession is voluntary depends not on any one factor, but upon the totality of all the relevant circumstances." (*People v. Johnson* (1970), 44 Ill.2d 463, 468.) That determination is to be made initially by the trial court, and its finding will not be disturbed on review unless it is contrary to the manifest weight of the evidence. (*People v. Higgins* (1972), 50 Ill.2d 221.) Respondent's claims of physical abuse are unsupported by any other evidence in the record, even the testimony of his mother. As to the existence of the other factors alleged to have rendered respondent's confession involuntary, no dispute exists.

Despite his youth, respondent was not a stranger to the criminal justice system. He had been referred to the juvenile court in 1970 for obstruction of justice and also had on his record several station adjustments for curfew violations and aggravated battery with a gun. Respondent was doing well in high school; as nearly as can be determined from the record, his communicative skills and intelligence appeared normal. Although the police practice of leaving suspects handcuffed in a chair all night cannot be condoned, respondent was not interrogated or harrassed by police officers during the night and was able to sleep off and on. His mother was contacted shortly after he was taken into custody, but chose not to come to the station until the next afternoon. She was then allowed to speak with respondent on several occasions prior to his written statement. Even though respondent had been in custody about 26 hours at the time of the written statement, he had orally admitted his participation in the crime within 16 hours of being taken into custody, much of which was spent alone in the interrogation room without interrogation or harrassment. While respondent was fed only twice during the 26-hour detention, he was taken into custody after dinnertime on May 25, and no reason would normally exist to offer food in those circumstances. He had been fed within just a few hours of his oral confession

at the scene of the crime, having been offered food at 7:30 a.m. on the 26th and given what he requested. Although he did not lunch during that day, there is no indication that he requested food and was refused. Respondent did not initiate the request for food that evening but was asked by Officer Hensley if he was hungry and again received the food he requested. He was repeatedly informed of his constitutional rights and his waiver of those rights is uncontroverted. He had ample opportunity to complain of mistreatment to his mother or Assistant State's Attorney Gervasi when giving the statement but did not do so, and his statement specifically denies that he had been mistreated or coerced into giving the statement. After a full consideration of the totality of the circumstances surrounding respondent's confession, we believe the trial court's finding that it was voluntarily given is clearly not contrary to the manifest weight of the evidence.

"This court has consistently held that when the voluntary nature of a confession is brought into question by a motion to suppress, the State must produce all material witnesses connected with the taking of the statements or explain their absence." (*People v. Armstrong* (1972), 51 Ill.2d 471, 475-476.) Neither Assistant State's Attorney Gervasi nor Officer Blackley testified at the hearing on the motion to suppress. After respondent presented his evidence, the State explained to the trial judge that Gervasi was prosecuting another case and Blackley was testifying in another court. Respondent contends that both men were material witnesses on the question of voluntariness and, since the excuse for their absence was inadequate, the State violated the "material witness" rule and the trial court erred in not suppressing respondent's confession.

Respondent made no claim of coercion at the time his written statement was taken, but did claim that he was in fear of further physical abuse by Officers Hensley and Deloughry if he refused to give the statement. This court

has interpreted the "material witness" rule to mean that "where there was no claim of coercion at the time a written confession was executed, but only the claim by the defendant that he was in fear of further beatings, the State [is] not required to call all of the witnesses present at the time the defendant signed the confession." (*People v. Golson* (1965), 32 Ill.2d 398, 402; see also *People v. Joe* (1964), 31 Ill.2d 220; *People v. Freeman* (1962), 25 Ill.2d 88; and *People v. Sims* (1961), 21 Ill.2d 425.) Assistant State's Attorney Gervasi was not present when the alleged coercive tactics used by police to procure respondent's statement are said to have occurred, nor did respondent complain to him of any abuse by police officers. Under these circumstances, he was not a material witness and the State was not required to produce him at the suppression hearing or explain his absence.

The situation as to Officer Blackley is not as easily resolved, at least in part due to the confusion created by respondent. Although our Code of Criminal Procedure requires that a motion to suppress "be in writing and state facts showing wherein the confession is involuntary" (Ill. Rev. Stat. 1971, ch. 38, par. 114—11(b)), respondent's written motion alleged only that "any statements elicited from him were the direct or indirect result of either physical or mental coercion and were therefore involuntary." That failure to state the facts clearly created difficulty for the State in determining initially just who were the material witnesses on the question of voluntariness, as indicated by the assistant State's Attorney in the trial court. Thus uninformed of the facts relating to any physical or mental coercion, the State presented witnesses who accounted for the entire time respondent was in custody until giving the written statement, but did not produce all persons who had contact with respondent during that period of time. Even after respondent's testimony at the suppression hearing, Officer Blackley's status was not entirely clear. On direct examination,

respondent stated that Officer Soil's partner had "hung him up" on the evening of May 25, but did not identify that partner. There is no question that Officer Blackley was in fact Officer Soil's partner that evening, but considering the confusion displayed by respondent throughout the record as to which officers were present at various times, it is not entirely certain that respondent meant Officer Blackley when he said Soil's partner hung him up, and, in any event, on cross-examination respondent indicated that it was actually Officer Soil who had hung him over the window bar. The trial judge concluded that respondent "said Soil hung him up ."

Whether the case should have been continued until Officer Blackley's testimony in another trial had been concluded, as suggested to the trial court by the State, is further complicated by defense counsel's statements to the trial judge. The Code of Criminal Procedure requires that "Objection to the failure of the State to call all material witnesses on the issue of whether the confession was voluntary must be made in the trial court." (Ill. Rev. Stat. 1971, ch. 38, par. 114–11(d).) After the State had informed the court that Assistant State's Attorney Gervasi was prosecuting another case and Officer Blackley was testifying in another court, respondent's counsel made the following remarks:

> "When you say he is prosecuting at 26th and California, to me, that is a valid excuse.
>
> If he is testifying, two days of testifying is very questionable. If he is testifying in another Branch, that, to me, is a good excuse."

The appellate court concluded that these statements, made to the court in the context of a discussion of the necessity of producing the officer and the Assistant State's Attorney, constituted a waiver of any objection to the absence of Officer Blackley, pointing out that had an unequivocal objection been made, the trial judge would have ruled thereon and the State would have had an

opportunity to produce any other witnesses deemed by the court to be material.

While it would have been preferable to have had the benefit of Officer Blackley's testimony, we do not regard its absence, in the circumstances of this case, as reversible error. Given the lack of specificity in the motion to suppress and the resulting inability of the State to determine in advance of respondent's testimony which of its witnesses would be essential, the uncertainty whether Officer Blackley was even present at the time of the alleged coercion, the State's explanation of his absence and expressed willingness to call any witnesses deemed necessary by the court if a continuance were allowed, together with the equivocal nature of defense counsel's comments regarding Officer Blackley's absence, we believe the trial court's action was not unreasonable.

The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. I fail to perceive how the majority can acknowledge the extent of the mistreatment to which the respondent was subjected, and despite that fact, hold that the question of the illegal arrest was waived. In *Muscarello v. Peterson,* 20 Ill.2d 548, an action seeking to recover damages for personal injuries suffered by a minor, the court, finding that there was "gross misconduct" on behalf of an insurance carrier, said "The court has a duty to see that the rights of an infant are adequately protected, and is bound to notice substantial irregularities even though objections are not properly presented on its behalf." (20 Ill.2d 548, 555.) The "gross misconduct" to which the *Muscarello* court referred was the alteration of a medical report. The irregularity which the majority here holds was waived was the illegal arrest of a 16-year-old defendant. In view of the fact that respondent's statements are "the only

evidence directly implicating him in the killing," the rule of *Muscarello* should certainly apply in this case.

Concerning the illegal arrest and the treatment accorded this boy prior to his confession, the appellate court said: "This evidence establishes that the respondent was illegally detained, \*\*\*. The evidence also establishes that the respondent was held overnight seated in a chair and handcuffed to a wall, disclosing a police procedure which is to be severely condemned." *In re Lamb,* 21 Ill. App. 3d 827, 835.

The majority states "Although the police practice of leaving suspects handcuffed in a chair all night cannot be condoned, respondent was not interrogated or harassed by police officers during the night and was able to sleep off and on." 61 Ill.2d at 388.

In *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428, after holding that the constitutional privilege against self-incrimination was applicable in the case of juveniles, the Supreme Court said: "We appreciate that · special problems may arise with respect to waiver of the privilege [against self-incrimination] by or on behalf of children, and that there may well be some differences in technique —but not in principle—depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." 387 U.S. 1, 55, 18 L. Ed. 2d 527, 561, 87 S. Ct. 1428, 1458.

Despite the fact that "prior to his initial interrogation, respondent was repeatedly informed of his constitutional rights by all police officers who questioned him \*\*\*" (61 Ill.2d at 386), and his having been given food on two

occasions, I find it difficult to rule out the possibility that the statement was the product of the "fright or despair" suggested by *Gault*.

The judgment should be reversed and the cause remanded for a new trial and the circuit court should be directed to consider the voluntariness of respondent's statements in the light of *Brown v. Illinois*, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.

SCHAEFER and WARD, JJ., join in this dissent.