THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CAROL LUMPP *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 80—549, 80—680 cons.

Opinion filed March 30, 1983.

Ralph Ruebner and Stewart M. Weltman, both of State Appellate Defender's Office, of Chicago, for appellant William Carr.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill, Assistant Public Defender, of counsel), for appellant Carol Lumpp.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Lester M. Joseph, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Defendants, William Carr and Carol Lumpp, were charged by information with murder and conspiracy. Lumpp waived her right to trial by jury, and after a bench trial, was found guilty of the offenses charged and sentenced to a term of imprisonment of 25 years. Carr was tried simultaneously by a jury and was also found guilty of both

offenses. He was sentenced to a 40-year term of imprisonment.

Each defendant admitted a role in the October 26, 1978, shooting death of Richard Bernoski in separate written statements which were received into evidence at trial. Each argues on appeal that the trial court erred in denying his motion to suppress his statement because the State failed to prove it voluntary and because the statement was the fruit of an illegal arrest. Both motions raised these two issues.

I

Each defendant argues that the prosecution failed to prove his statement was voluntary because it failed to produce all material witnesses connected with the taking of the statement or to explain their absence at the hearing on his motion to suppress statements. Carr argues that the State failed to produce or explain the absence of four material witnesses: Assistant State's Attorney Julia Nowicki and Chicago police officers Spinks, Savage and McCabe. Lumpp makes the same argument as to Spinks and Spinks' partner.

When the voluntary nature of a statement is brought into question by a motion to suppress, the burden of proving that it is voluntary is assumed by the State. (Ill. Rev. Stat. 1979, ch. 38, par. 114—11(d); *People v. Armstrong* (1972), 51 Ill. 2d 471, 475-76, 282 N.E.2d 712.) The State discharges this burden by producing all material witnesses connected with the taking of the statement or by explaining their absence. *In re Lamb* (1975), 61 Ill. 2d 383, 389, 336 N.E.2d 753, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672; *People v. Armstrong* (1972), 51 Ill. 2d 471, 475-76.

If the State fails to call a material witness, the defendant must object in the trial court or the matter is waived for purposes of appeal. (*People v. Clay* (1981), 98 Ill. App. 3d 534, 541, 424 N.E.2d 814; see Ill. Rev. Stat. 1979, ch. 38, par. 114—11(d).) Thus, since Carr did not object to the failure of the prosecution to call Officer McCabe as a witness at the hearing on his motion, he may have waived any requirement that the prosecution produce McCabe. Carr, however, did object at the hearing on his motion to the failure of the prosecution to produce Assistant State's Attorney Nowicki, who took his written statement. Although the State correctly points out that Carr did not testify at the hearing that Nowicki coerced him in any way or that she was present during acts of coercion, Carr did testify that she ignored his request to call his attorney. The State responds to this by referring to Nowicki's trial testimony that Carr never asked her if he could call an attorney.

Notwithstanding any error in the failure to produce McCabe or

Nowicki, we believe that the trial court erred in failing to suppress the written statement of each defendant, because Officer Spinks was a material witness connected with the taking of both statements, and his absence was not adequately explained.

Evidence at the hearings on the motions shows that Chicago police officer Hans Heitmann and two other officers located Carr and Lumpp in a room at the Acres Motel in Chicago during the evening hours of November 12, 1978. From there, defendants were taken to Area Six Homicide Headquarters. According to Heitmann, they arrived there shortly after 9 p.m. Lumpp and Carr were placed in separate interview rooms.

The prosecution produced the testimony of two witnesses to establish voluntariness at each defendants' hearing: Heitmann and Chicago police officer Lawrence Flood. Assistant State's Attorney Nowicki also testified in rebuttal at Lumpp's hearing. These witnesses, however, did not testify as to the period of time between when Heitmann went off duty at approximately 12 a.m. on November 13, 1978, and when Officer Flood first saw each defendant at approximately 9:30 a.m. on that date. Lumpp made her written statement at approximately 6:15 p.m. on that date, and Carr made his written statement at approximately 8 p.m. on that date.

At the hearing on his motion, Carr gave the following testimony as to the time not accounted for by the prosecution witnesses. At approximately 10:15 p.m. on November 12, 1978, certain officers left the room he was in. Before doing so, an officer handcuffed him to the wall and to the chair in which he was sitting. No one entered the room until 1:30 a.m. on November 13. At that time, Officers Spinks and Savage entered the room. Spinks told Carr that the police knew that he knew something about Bernoski's death. Spinks accused Carr of being an enforcer for one Colini, and told Carr that if he did not cooperate with him, "he would let Detective Dave Paul in on [him]." At this time, Spinks opened the door and Carr saw Paul. According to Carr, he had had a heated argument with Paul the previous September, and Paul had told Carr to stay away from a certain woman and threatened him with physical violence and jail if he did not. Carr also asked Spinks if he could call his attorney, and, in response, Spinks became angry and told Carr that he had better start cooperating. Carr's conversation with Spinks lasted approximately an hour, and he was handcuffed during the conversation. Although Officer Savage left the room on a couple of occasions, Spinks remained in the room during the entire conversation. Spinks and Savage left Carr's room at approximately 2:30 a.m., and it was not until approximately

10:30 a.m. that another police officer entered Carr's room. During that time he was handcuffed.

At the hearing on her motion, Lumpp gave the following testimony as to the time not accounted for by the prosecution. Approximately one-half hour after she last saw Officer Heitmann, a police officer named Spinks entered the room with his partner, whom Lumpp was unable to name. Spinks and his partner left the room, returned with some coffee for Lumpp, and questioned her. When Lumpp asked them if she could call her attorney, Spinks refused her request, shouting, "Quit the bullshit, quit beating around the bush." Lumpp began to cry. She persisted in her request for an attorney, and Spinks told her that if she cooperated, she would "get a pass." She understood this to mean she would not be charged. Lumpp spoke with Spinks three or four times over an eight-hour period. She continued to ask for her attorney, and he continued to tell her that if she cooperated with the police and told all that she knew, she would not be charged with murder. Spinks also told her that she would be his number one witness, that she would receive protective custody, and that he would help her get a "fresh start." Lumpp also testified that: at this time her face was noticeably swollen from a toothache; that she asked to use the washroom; that Spinks at first denied this request but later relented; and that when she complained of stomach pains, he brought her coffee and continued the questioning. Lumpp last saw Spinks at approximately 8 a.m. At this time, he said that she would be his number one witness and that she would be released after she retold her story to another investigator.

The State argues that Officers Spinks and Savage[1] were not material witnesses to the defendants' statements. As to Carr, the State notes that Carr testified that Officers Spinks and Savage only spoke to him from 1:30 a.m. until 2:30 a.m. on November 13, and that Carr made his statement much later that day. Thus, according to the State, their alleged threats did not play a part in procuring Carr's confession. We observe, however, that Carr testified that Spinks not only threatened to let another police officer "in on me," but also Spinks denied his request for his attorney.[2] As to Lumpp, the State argues that Spinks and Savage did not play a significant role in procuring

---

[1]The State, in its brief, assumes that Officer Savage was Officer Spinks' partner. Lumpp, at the hearing on her motion, testified that she was interrogated by Spinks and his partner. For purposes of this opinion, we will accept the State's assumption.

[2]We also note that if Carr requested counsel of Spinks, we would have to impute notice that counsel had been requested to those officers interrogating him subsequently. *People v. Blanchard* (1967), 37 Ill. 2d 69, 73, 224 N.E.2d 813.

her statement, because she only made her statement because she feared Carr would incriminate her. Lumpp testified at the hearing on her motion that she spoke to Spinks three or four times over an eight-hour period which ended at approximately 8 a.m. on November 13. She testified that during that time, Spinks shouted at her, refused her requests for an attorney, and told her that if she cooperated with the police she would not be charged with murder.

Clearly, Officer Spinks was a material witness to the statement of each defendant. A witness may be material even though he was not present when the statement involved was made. (*People v. Armstrong* (1972), 51 Ill. 2d 471, 476.) Further, the determination of whether a statement is voluntarily given depends upon the totality of the circumstances. (*In re Lamb* (1975), 61 Ill. 2d 383, 388; *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Although Spinks was not present when the written statements of defendants were taken, his questioning of each defendant was a significant part of the totality of circumstances leading to each statement, and he should have been produced at the hearings below. We further believe that Officer Savage was a material witness to the extent that he was present when threats or promises were made to either defendant and when requests for counsel were denied.

The State observes that the prosecution attempted to explain the absence of Officers Spinks and Savage at the hearing on Carr's motion. At that hearing, the prosecution stated that Officer Savage had quit the police force and no longer resided in the city of Chicago, and that Officer Spinks was on furlough and would return to Illinois in 2½ to three weeks. The record of the hearing on Lumpp's motion contains no explanation of the absence of Spinks and Savage. The State, however, relying on a statement by Lumpp's counsel at her hearing, argues that her counsel knew the reasons given at Carr's hearing[3] for the absence of Spinks and Savage.

We do not address the question of the knowledge of Lumpp's counsel, because we are of the opinion that the explanations of the absence of Spinks and Savage were clearly insufficient. In *Armstrong*, our supreme court discussed explanations given for the absence of two material witnesses. The court held that testimony that a police officer " 'should be' on furlough did not even attempt to explain the State's failure to produce him." (51 Ill. 2d 471, 477.) The court also found that testimony that another police officer was on vacation and

---

[3]The hearing on Carr's motion occurred before the hearing on Lumpp's motion.

could not be contacted "did not justify the State's failure to produce [him] during the hearing." (51 Ill. 2d 471, 477; see also *People v. Thomas* (1974), 22 Ill. App. 3d 854, 858, 318 N.E.2d 342.) Like the *Armstrong* court, we are of the opinion that the State's attempt to explain the absence of Officers Spinks and Savage was insufficient. The explanation that the former was on furlough and that the latter no longer worked for the police department and no longer resided in Chicago, standing alone, did not excuse the failure to produce them.

■ The State also argues that its attempted explanation of the absence of Officers Spinks and Savage was sufficient as to Carr, because at the hearing on his motion, the prosecution offered to continue the hearing until Officer Spinks returned from furlough, and Carr made no further protest of the absence of the two officers. That Carr made no further protest is simply not true. Rather, at the hearing on Carr's motion, his counsel subsequently argued to the court that the State had failed to produce all material witnesses, including Spinks and Savage. The State further suggests that both Lumpp and Carr cannot complain of the prosecution's failure to call Officers Spinks and Savage, because neither defendant, at his respective hearing, requested a continuance. The State cites no cases to support this theory, and in light of the fact that the State has the burden of proof on the question of voluntariness, we do not agree with the State's suggestion.

■ The State's last argument with respect to this material witnesses issue is that the failure of the prosecution to produce Spinks and Savage at the hearing on each defendant's motion should be excused, because each motion failed to "state facts showing wherein the confession is involuntary." (See Ill. Rev. Stat. 1979, ch. 38, par. 114—11(b).) The State relies on *In re Lamb* and *People v. Lopez* (1981), 93 Ill. App. 3d 152, 416 N.E.2d 1127. In each case, the court relied in part on the lack of specificity in the motion to suppress to hold that there was no prejudicial violation of the material witness rule. However, in *Lamb*, our supreme court observed that "the State presented witnesses who accounted for the entire time respondent was in custody until giving the written statement." (61 Ill. 2d 383, 390.) Similarly, in *Lopez*, the court stated that "the State offered the testimony of Officer Battaglia who accounted for the entire time defendants were in custody until the statement was given." (93 Ill. App. 3d 152, 157.) Unlike those cases, the State here failed to offer any testimony at either defendant's motion hearing to account for the time between midnight, when Officer Heitmann went off duty, and 9:30 a.m. when Officer Flood saw the defendants. *Lamb* is also distinguishable be-

cause in that case there was uncertainty whether a police officer, claimed to be an absent material witness, was present at the time of the alleged coercion. Further, in *Lamb*, unlike the instant case, defense counsel made equivocal comments regarding that officer's absence. (61 Ill. 2d 383, 392.) Thus, *Lamb* did not hold that lack of specificity in a motion to suppress, by itself, negates the State's burden to produce all material witnesses, and we are not willing to so hold.

■ In sum, we hold that the prosecution failed to meet its burden of producing all material witnesses connected with the taking of each defendant's statement or explaining their absence. Accordingly, their statements should have been suppressed. For that reason, their convictions must be reversed, and the causes must be remanded for new trials.

## II

Having reached this conclusion, we do not address the arguments of each defendant that the trial court's finding of voluntariness was against the manifest weight of the evidence. (See *People v. Prim* (1972), 53 Ill. 2d 62, 70.) We observe, however, that where each defendant's testimony was contradicted by the testimony of witnesses for the State, the trial court could properly have believed the testimony of the latter.

Lumpp also argues that her statement should have been suppressed because police officers ignored her repeated requests for counsel. This issue is largely a matter of credibility. Lumpp asserts that her testimony that she made requests for an attorney to Officers Heitmann and Flood was more credible than the testimony of Heitmann and Flood that she did not do so. In making this argument, she relies on the fact that Heitmann wrote his name and phone number on the reverse side of a business card of Lumpp's attorney. However, Lumpp admitted on cross-examination that she sometimes used business cards for keeping notes or information. With respect to Flood, she argues that it is unrebutted that Lumpp made a telephone call to attorney Howard Gilman at approximately 11:30 a.m. on November 13. She contends that it is "patently unbelievable" that Lumpp would call an attorney, but then not tell the police she had done so. However, Flood testified that Lumpp was permitted to make a telephone call and that she did not tell him she was calling an attorney. Although the attorney's card and the telephone call tend to corroborate Lumpp's testimony, the conflict between the testimony of Lumpp and the officers was a question of credibility to be resolved by the trial court. In arguing that her requests for an attorney were not honored,

Lumpp also asserts that her testimony that Officer Spinks failed to honor her requests for an attorney was never rebutted. We feel that our holding on the material witness issue satisfactorily addresses this contention. In a similar argument, Lumpp also asserts that her testimony that Spinks made promises of leniency to her was unrebutted. In our opinion, our holding on the material witness issue is also dispositive of this issue.

### III

Lastly, we address each defendant's contention that his written statement was the fruit of an illegal arrest.

In the trial court, the time of the arrests was never fixed. At the hearing on Carr's motion, Officer Heitmann testified that Carr agreed to go to the police station, that Carr was free not to accompany him to the police station, and that Carr was free to leave the police station after he arrived there. At the hearing on Lumpp's motion, Heitmann testified that he asked Carr to accompany him to the police station, and that Lumpp came along with them. We note, however, that at trial Heitmann testified that both Lumpp and Carr replied that they would "be glad to" go to the police station. He also testified at the hearing that Lumpp was free to leave the police station on November 12. The State concedes, however, that Lumpp and Carr were under arrest at 9 a.m. on November 13. Officer Flood testified at the hearings on the motions that neither defendant was free to leave the police station at that time. (See *Dunaway v. New York* (1979), 442 U.S. 200, 206-16, 60 L. Ed. 2d 824, 832-38, 99 S. Ct. 2248, 2253-58; *People v. Townes* (1982), 91 Ill. 2d 32, 36-39, 435 N.E.2d 103, *cert. denied* (1982), 459 U.S. ___, 74 L. Ed. 2d 143, 103 S. Ct. 174.) The State suggests that the time of the arrest of each defendant is not consequential because Officer Heitmann had probable cause to arrest both of them at the Acres Motel. We agree that it is not important to determine whether the seizure occurred at the Acres Motel, at the police station at 9 o'clock the next morning, or at some time in between, because the record does not show that the police had any more evidence of probable cause at 9 o'clock the following morning than they had at the Acres Motel the previous evening.

Probable cause for an arrest exists when "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." (*People v. Moody* (1983), 94 Ill. 2d 1, 7; *People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, *cert. denied* (1980), 449 U.S. 1010, 66 L.

Ed. 2d 467, 101 S. Ct. 564; Ill. Rev. Stat. 1979, ch. 38, par. 107—2.) "This standard requires more than mere suspicion, but it does not require the arresting officers to have in their hands evidence sufficient to convict the defendant." (*People v. Moody* (1983), 94 Ill. 2d 1, 7; *People v. Jones* (1967), 38 Ill. 2d 427, 431, 231 N.E.2d 580.) And our supreme court has repeatedly stated:

" 'Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. [Citations.] In deciding the question of probable cause in a particular case the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act.' [Citation.]" (*People v. Creach* (1980), 79 Ill. 2d 96, 102; *People v. Robinson* (1976), 62 Ill. 2d 273, 276-77, 342 N.E.2d 356; *People v. Clay* (1973), 55 Ill. 2d 501, 504-05, 304 N.E.2d 280.)

Where the trial court has conducted a lengthy hearing on the issue, and has determined that the officers had probable cause to arrest the defendant, a court of review will not disturb this finding unless manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 505; *People v. Thompson* (1981), 93 Ill. App. 3d 995, 1002, 418 N.E.2d 112, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490.) Moreover, a reviewing court, in passing upon a trial court's ruling that probable cause to arrest a defendant existed, may consider testimony adduced at trial as well as the pretrial hearing. *People v. Thompson* (1981), 93 Ill. App. 3d 995, 1002.

The State argues that there was probable cause to arrest Carr at the Acres Motel. At the hearing on Carr's motion, Officer Heitmann testified that on November 12, 1978, he read certain police reports concerning the shooting of Bernoski, which had occurred on October 26, 1978. One of the reports contained a description of the two assailants, a black male and a white female. The black man was described as being between five feet, 10 inches and six feet tall, and approximately 160 to 180 pounds and 25 to 30 years old. He also learned that Chicago police officer John Valaitis had made a photographic identification of Carr as the black male that he had seen near the scene of the murder, and that Carr, at that time, was accompanied by a white female. Heitmann had also obtained a photograph of Carr from the daily bulletin issued by the police department. He possessed this information when he encountered Carr at the Acres Motel. Officer Valaitis testified at Carr's hearing that on October 26, 1978, he went to the

scene of the crime after he received a call over police radio. He heard descriptions of the assailants and later told investigators that prior to the homicide, he had seen two people who fit the descriptions walking in the direction of the place where the homicide occurred. He picked a photograph of Carr from among seven photographs as being the picture of one of those persons, and testified that Carr was in the company of a white female. Valaitis' trial testimony placed the couple within one city block of the scene of the killing at approximately 1:30 a.m., the approximate time of the offense.[4] The State also relies on Officer Heitmann's trial testimony that the black man in the motel room bore a "very strong resemblance" to the picture he had of Carr, and that at the motel room, Carr identified himself by a name other than Carr.

■ We are of the opinion that these facts, viewed cumulatively, constituted probable cause to arrest Carr. Probable cause is determined from viewing the evidence as a whole, and a court can find probable cause even though the pieces of evidence individually would not amount to probable cause. (*People v. Moody* (1983), 94 Ill. 2d 1, 8.) Here, the evidence showed: Carr matched the general physical description given by an eyewitness; he was near the scene of the homicide at 1:30 a.m., the time of the homicide, in the company of a white woman; and the offense was committed by a black man and white woman. In reaching this conclusion, we recognize that a general description does not, by itself, establish probable cause to arrest a person fitting that description. (*People v. Williams* (1977), 53 Ill. App. 3d 266, 272, 368 N.E.2d 679; *In re Woods* (1974), 20 Ill. App. 3d 641, 646, 314 N.E.2d 606; see *People v. Gabbard* (1979), 78 Ill. 2d 88, 93, 398 N.E.2d 574.) But the general description here was supported by other relevant facts known at the time of arrest. In short, we believe there were too many coincidences pointing to Carr to enable us to say that his guilt was not probable in the fourth amendment sense. (See *People v. Moody* (1983), 94 Ill. 2d 1, 9.) Accordingly, we will not disturb the trial court's finding of probable cause as to Carr as being against the manifest weight of the evidence.

■ Carr also argues that the police did not have probable cause to arrest him because he and a white woman were brought before Wayne Meskill, the only eyewitness to the offense, shortly after the homicide, but were not identified by him. In fact, Chicago police offi-

---

[4]Valaitis placed the couple at the intersection of Wolfram and Sheffield streets at 1:30 a.m. Other testimony showed that the crime occurred on the 900 block of West Wolfram and that the intersection of Wolfram and Sheffield is at 1000 West Wolfram.

cer Michael Atkins had testified at the hearing on Carr's motion that in the early morning hours of October 26, he and his partner received a message over police radio describing a black male and a white female involved in the shooting. About 10 minutes later, Atkins and his partner detained Carr and a white woman, and transported them to the scene of the crime for a show-up, but they were not identified by the eyewitness. Carr had given similar testimony at the hearing. Carr now asserts that Officer Atkins' knowledge of this should be imputed to the other officers involved in the case, although Officer Heitmann testified at trial that he did not know of the show-up. In our opinion, this fact alone does not destroy the inference of probable cause.

The State argues that there was probable cause to arrest Lumpp at the Acres Motel. At the hearing on Lumpp's motion, Officer Heitmann gave testimony similar to his testimony at Carr's hearing. According to Heitmann, police reports described the white woman as five feet, five inches to five feet, seven inches tall, weighing 120 to 130 pounds, 25 to 30 years of age, with blond or light brown hair. He also had another description of the white woman as being five feet, two inches to five feet, five inches tall. Heitmann also testified that Lumpp was the white woman in the motel room with Carr; that in the motel room, Lumpp was wearing gold rimmed glasses; and that she appeared to be heavier than the woman in the description. At trial, Heitmann testified that the description he had of the white female assailant included the fact that she wore wire-rimmed glasses, and that Lumpp, in the motel room, appeared to weigh more than 170 pounds, but the woman sought was described as between 120 and 130 pounds.

As we observed above, a general description, by itself, does not establish probable cause to arrest a person fitting that description. Even if such a description were sufficient, Lumpp did not match the general description. The female assailant was described as weighing between 120 and 130 pounds, yet Heitmann testified that when he saw her at the motel, she did not fit the description. Furthermore, there was no testimony that the glasses worn by the assailant or the glasses that Lumpp wore at the motel were unusual.

■■ It appears that the only other reason that Lumpp was seized was because on November 12, she was a white woman in the same motel room with Carr. But our supreme court has stated: "[P]robable cause to arrest a particular individual does not arise merely from the existence of probable cause to arrest another person in the company of that individual." (*People v. Creach* (1980), 79 Ill. 2d 96, 102-03.) It does not appear from the transcript that the trial court made an express finding of probable cause; however, we are of the opinion that

any finding of probable cause implicit in the denial of Lumpp's motion was against the manifest weight of the evidence.

A conclusion that the police lacked probable cause to arrest, however, does not automatically require suppression of a statement following the arrest. Although the court below did not address the question of whether the taint of the illegal arrest of Lumpp was sufficiently attenuated, the State argues on appeal that Lumpp's written statement was sufficiently an act of free will to purge the taint of any illegal seizure.

The State relies on *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254. In that case, the Supreme Court identified several factors that should be considered in determining whether a confession has been obtained by exploitation of an illegal arrest: "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, *** and, particularly, the purpose and flagrancy of the official misconduct." (*Taylor v. Alabama* (1982), 457 U.S. 687, 690, 73 L. Ed. 2d 314, 319, 102 S. Ct. 2664, 2667, quoting *Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261.) *Brown* also observed that *"Miranda* warnings, *alone* and *per se,* cannot always make the act [of confession] sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." (*Brown v. Illinois* (1975), 422 U.S. 590, 603, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261.) The court did, however, state that *"Miranda* warnings are an important factor *** in determining whether the confession is obtained by exploitation of an illegal arrest." (422 U.S. 590, 603, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261.) And the burden of showing that a confession is admissible because not obtained by exploitation of an illegal arrest rests on the prosecution. *Taylor v. Alabama* (1982), 457 U.S. 687, 690, 73 L. Ed. 2d 314, 319, 102 S. Ct. 2664, 2667; *Brown v. Illinois* (1975), 422 U.S. 590, 605, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261.

In maintaining that Lumpp's statement was purged of the taint of any illegal arrest, the State observes that she was repeatedly advised of her *Miranda* rights. The State further asserts that intervening circumstances were present. First, the State argues that interrogation by Officer Flood was such an intervening circumstance, because Flood had testified that Lumpp said she would speak to him because she knew and trusted him. Secondly, the State contends that Lumpp's fear that Carr would implicate her as the murderer was another intervening event. See *People v. Gabbard* (1979), 78 Ill. 2d 88, 99-100, 398 N.E.2d 574.

■ Notwithstanding the State's contentions, we are of the opinion that the record on appeal fails to support the State's claim that the taint of any illegal arrest of Lumpp was purged. The United States Supreme Court has stated on several occasions that "[t]he voluntariness of the statement is a threshold requirement." (*Brown v. Illinois* (1975), 422 U.S. 590, 604, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2262; see also *Taylor v. Alabama* (1982), 457 U.S. 687, 690, 73 L. Ed. 2d 314, 319, 102 S. Ct. 2664, 2667; *Dunaway v. New York* (1979), 442 U.S. 200, 217, 60 L. Ed. 2d 824, 839, 99 S. Ct. 2248, 2259.) We have already held that the State failed to meet its burden of proof on the issue of voluntariness. Accordingly, we must conclude that the State also failed to meet its burden of showing that Lumpp's statement was not obtained by exploitation of her illegal arrest.

Having reached the aforementioned conclusions, we do not address the remaining issues presented by defendants. Defendants' convictions must be reversed and the causes must be remanded for new trials.

Reversed and remanded.

McNAMARA, P.J., and McGILLICUDDY, J., concur.