99 Ill. App.3d 1035 (1981)
426 N.E.2d 284
In re D.W.S., a Minor.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
D.W.S., Respondent-Appellant.)
No. 80-391.
Illinois Appellate Court  Third District.
Opinion filed August 27, 1981.
Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.
John A. Barra, State's Attorney, of Peoria (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Judgment affirmed.
*1036 Mr. PRESIDING JUSTICE SCOTT delivered the decision of the court and the following opinion:
The minor respondent, D.W.S., was adjudicated a delinquent on July 7, 1980, based on his commission of burglary and theft. Following a dispositional hearing he was placed on probation for a period of 18 months.
On appeal the 16-year-old respondent raises two issues related to the trial court's admission of his confession as voluntary: whether his right to remain silent was scrupulously honored where the police resumed interrogation of him after his request to cease questioning; and whether he knowingly and voluntarily waived his Miranda rights.
From the somewhat abbreviated transcript of proceedings and agreed statement of facts filed as a part of the record in this case, the following facts emerge. Three witnesses testified for the State at the minor's adjudicatory hearing. The first witness was Patricia Knighton, the older sister of D.W.S., who testified that on June 20, 1980, she left her house unoccupied and with the front door unlocked. She later discovered a buck knife and $.85 in United States currency had been taken from her dresser.
The second witness, Vernon Beaty, testified that at about 7:30 p.m. on June 20, 1980, he discovered a buck knife in the restroom of a Hardee's Restaurant in which he was eating. Mr. Beaty identified D.W.S. as the young man who approached him in the restaurant a short time later and asked if he had found a buck knife, which he then returned to the minor.
The final witness for the State was Officer William Gaskins. His testimony regarding the interrogation of D.W.S. and the obtaining of inculpatory statements from the minor generated the issues raised in this appeal.
Officer Gaskins testified that he first interrogated D.W.S. for approximately one hour on the evening of June 21, 1980. This interrogation, which began at 7:36 p.m., was conducted at the Peoria Heights police station. D.W.S. was informed of his Miranda rights before the interrogation began. He denied any involvement in the burglary and then indicated that he did not wish to say anything else. Questioning ceased at that time.
At approximately 9 p.m. the same evening, D.W.S. was transported by Officer Gaskins from the police station to the Peoria County juvenile detention center located on Gift Avenue. At approximately 11 p.m., D.W.S. was again questioned by Officer Gaskins. This interrogation took place in the presence of another uniformed officer in a small anteroom at the Gift Avenue house. Officer Gaskins testified that he had made attempts to contact four of the minor's relatives prior to the second interrogation, but he had been unable to reach anyone.
*1037 Before questioning began at the Gift Avenue facility, D.W.S. was again advised of his Miranda rights. Specifically, he was told that he had a right to remain silent, that he had a right to the presence of counsel and that counsel would be appointed if he could not afford one. He was not specifically admonished that he had a right to cut off questioning at any time. The trial court correctly ruled that such an admonition was not necessary to comply with Miranda. See Miranda v. Arizona (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, and People v. Pleasant (1980), 88 Ill. App.3d 984, 411 N.E.2d 132.
By admission of the defense counsel at the suppression hearing, it is uncontested that D.W.S. knowingly waived his rights when he responded that he understood his rights and that he wanted to speak without an attorney. D.W.S. then admitted his involvement in the burglary. He was not questioned again following the termination of this interrogation.
Officer Gaskins testified that prior to the second interrogation of D.W.S. he had discovered new information concerning the buck knife stolen from Ms. Knighton's home. This information inculpated the minor to a greater degree.
 1, 2 We are asked to decide, initially, whether the second interrogation of D.W.S. violated his right to cut off questioning. We hold that it did not.
It is clear that a defendant's exercise of his right to remain silent or to cut off questioning does not prevent all subsequent interrogation by the police. Reinterrogation is allowed if the defendant's right to cut off questioning is scrupulously honored under the circumstances. (Michigan v. Mosley (1975), 423 U.S. 96, 46 L.Ed.2d 313, 96 S.Ct. 321; People v. Pleasant (1980), 88 Ill. App.3d 984, 411 N.E.2d 132.) Several factors enter into such a determination. Recently this court has examined a number of those factors in People v. Payton (1980), 91 Ill. App.3d 78, 414 N.E.2d 283, People v. Pleasant (1980), 88 Ill. App.3d 984, 411 N.E.2d 132, People v. Robinson (1980), 87 Ill. App.3d 621, 410 N.E.2d 121, and People v. Savory (1980), 82 Ill. App.3d 767, 403 N.E.2d 118.
The approach utilized in those cases to determine whether a defendant's right to remain silent is honored under Michigan v. Mosley (1975), 423 U.S. 96, 46 L.Ed.2d 313, 96 S.Ct. 321, involved a consideration of all the facts concerning the defendant's custody, his exercise of his right to remain silent, and his subsequent decision to speak to the police. As discussed in People v. Pleasant (1980), 88 Ill. App.3d 984, 988, 411 N.E.2d 132, 135, and reaffirmed in People v. Payton (1980), 91 Ill. App.3d 78, 81, 414 N.E.2d 283, 286:
"Two of the most crucial are whether there was a significant period of time, during which there was a complete cessation of questioning, between the defendant's exercise of his right to remain silent and the reinterrogation, and whether the reinterrogation *1038 was preceded by a fresh set of Miranda warnings [citation]. `Additional circumstances which tend to demonstrate that the defendant's right to remain silent was scrupulously honored are that a different officer conducted the second questioning and that a completely different subject matter was involved in the second questioning' [citation]. Most recently, in People v. Savory, [citation], this court found an additional factor tending to show the defendant's right to remain silent was not violated by the resumption of interrogation to be the presence of something in the record which would justify or explain the defendant's reconsideration of his decision to remain silent."
 3 Applying those factors to the case at bar, we note that when the minor respondent stated in the first interrogation that he no longer wished to discuss the charges against him, all questioning ceased. No additional questions were asked of the defendant until the second interrogation began approximately 2 to 2 1/2 hours later. This period of time or even a shorter period of time is sufficient to indicate that the defendant's right to remain silent has been honored. See People v. Pleasant (1980), 88 Ill. App.3d 984, 411 N.E.2d 132, where a 1 1/2-hour interval was sufficient, or Michigan v. Mosley (1975), 423 U.S. 96, 46 L.Ed.2d 313, 96 S.Ct. 321, where a 2-hour period was involved.
As previously discussed in this opinion, Miranda warnings were given before the second interrogation began, and the minor's response that he wanted to talk without an attorney indicates that he waived those rights.
Although the same police officer conducted both investigations, the setting for the interrogations was different. The record indicates that D.W.S. was no stranger to the Gift Avenue detention home.
Clearly, D.W.S. was questioned about the same crime at 11 p.m. as he had been at 7:30 p.m. This factor does not render the second interrogation unlawful, as the minor would have us believe, citing People v. Nestrick (1977), 45 Ill. App.3d 519, 359 N.E.2d 503, and People v. Morrisey (1977), 49 Ill. App.3d 622, 364 N.E.2d 454. As our discussion in People v. Robinson (1980), 87 Ill. App.3d 621, 626, 410 N.E.2d 121, 121-22, indicates, as long as the record supports the conclusion that the defendant's Miranda rights were scrupulously honored otherwise, he can be questioned about the same crime at subsequent interrogations.
In People v. Savory (1980), 82 Ill. App.3d 767, 403 N.E.2d 118, this court found that the presence of something in the record which would justify or explain the defendant's reconsideration of his decision to remain silent was another factor to be considered in determining whether his right to remain silent had been strictly observed. Such a factor is present in the instant case in Officer Gaskin's testimony that he had discovered new information about the buck knife in the interim between the two *1039 interrogations. This new information, which tended to further inculpate the minor, could reasonably have caused D.W.S. to reconsider his decision to remain silent.
The minor relies on People v. Savory in support of his contention that his right to remain silent was not scrupulously honored. In Savory this court reversed and remanded the murder conviction of a 14-year-old defendant due to improper reinterrogation. However, the Savory case is distinguishable from the instant case, since the minor in Savory was subjected to intense questioning for long periods of time on two successive days before giving his confession, which he shortly thereafter recanted. No such egregious conduct is evident in the case at bar.
Because this case involves a juvenile, we note the preferability of having the parents or other responsible adults present during questioning. The record here indicates that efforts were made to locate the minor's mother, grandmother, and two adult sisters during the interim between interrogations, although these efforts were unsuccessful. This fact, plus the fact that the minor first showed the police identification which stated his age as 17 before the first interrogation, indicate that the special precautions to be taken when a juvenile is being questioned were observed.
 4 For these reasons, we determine that the minor respondent's right to remain silent was not violated by the second interrogation which resulted in his confession. We make this determination mindful of the recent pronouncement by the United States Supreme Court in Edwards v. Arizona (1981), ___ U.S. ___, 68 L.Ed.2d 378, 101 S.Ct. 1880, that when an accused expresses a desire to deal with the police only through counsel, he is not subject to further interrogation until counsel has been made available to him, unless he has himself initiated further communication with the police. A waiver of that right must be shown by focusing on the defendant's understanding of the right and his intelligent and knowing relinquishment of it and not by an examination of the voluntariness of his confession. Thus, we see in Edwards a reinforcement of the defendant's Miranda rights which dictates renewed vigilance on the part of all reviewing courts in determining whether a defendant's rights have been violated.
The second issue raised by the defendant, whether his statements should have been suppressed since the record is devoid of sufficient evidence to show a knowing and intelligent waiver of his Miranda rights, is without merit. Although the card was not submitted into evidence, it is uncontested that the minor was read his Miranda rights before the first interrogation from a form used by the Peoria police department for that purpose and that both he and Officer Gaskins signed the card. It was further admitted, through statements made by defense counsel, that *1040 D.W.S. was given oral Miranda warnings prior to the second interrogation and that he waived those rights by stating that he wished to speak without an attorney.
Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.
Affirmed.
Mr. JUSTICE HEIPLE, specially concurring.
I concur with the result reached by Presiding Justice Scott but for a different reason.
Officer Gaskins questioned D.W.S. at the Peoria Heights police station for approximately one hour. The topic was the burglary. Miranda warnings were administered. Police questioning ceased because defendant said he had nothing else to say. The minor was then transported to the Gift Avenue detention facility. After arrival, and approximately an hour and a half after the first questioning, new Miranda warnings were given. Officer Gaskins began questioning D.W.S. about the burglary. The minor indicated he wanted to talk, and then confessed.
Just like any other right, a defendant can waive his right to silence. D.W.S. did so in this cause. He said he wanted to talk and that's what he did. Absent in the record is any evidence that Officer Gaskins or any other officer threatened, badgered, or coerced defendant into doing anything which was not his own conscious decision. Defendant was offered the opportunity to change his mind about talking and he freely chose to do so. I see no reason to reverse the decision of the trial court.
Mr. JUSTICE STOUDER, dissenting:
I respectfully dissent from the result reached by my colleagues. In my opinion the confession of the minor respondent should have been suppressed.
It seems to me the recent case of Edwards v. Arizona (1981), ___ U.S. ___, 68 L.Ed.2d 378, 101 S.Ct. 1880, not only reaffirms the principle of Miranda v. Arizona (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, but also reexamines and highlights the dual problems which may arise incident to custodial interrogations. The first area of concern is the advice to the person in custody regarding his constitutional rights commonly referred to as giving the person his Miranda rights. If, after being advised of these rights, the person in custody knowingly and voluntarily waives such rights then interrogation may proceed, and whatever statements are made whether inculpatory or exculpatory may be thereafter admitted, if relevant, as substantive evidence of the person's alleged criminal conduct.
*1041 However, if the person upon being advised of his constitutional rights declares that he does not wish to talk or respond to questions, or expresses his desire for an attorney, according to the teaching of Miranda, questioning should cease. This then presents the second aspect of the custodial interrogation problem. After a person has exercised his constitutional rights in accordance with the advice he has received, and the questioning has ceased, what then may possibly happen? Edwards answers this question by observing that if the person specifically waives the exercise of the constitutional right asserted then custodial interrogation may commence. At this stage where a constitutional right to be represented by an attorney has been exercised the inquiry is not whether his future statements are voluntary or whether the Miranda warnings have been reiterated but rather whether the continued exercise of the constitutional right claimed has been waived. Even though in Edwards his Miranda rights had been again given to the defendant and even though the trial court concluded that his confession was voluntary, the United States Supreme Court unanimously agreed the defendant had not waived his right to an attorney which he had exercised, the only disagreement between the justices being on how the exercise of the right could be waived.
Although Edwards deals with the defendant's request for an attorney before he would make a statement and his later making the statement because of the renewal of interrogation even though no attorney had been provided, the reasoning seems equally applicable to cases such as the one at bar where the defendant has merely declined to talk without accompanying such a refusal with a request for an attorney. In part this conclusion is based on the fact that Michigan v. Mosley (1975), 423 U.S. 96, 46 L.Ed.2d 313, 96 S.Ct. 321, was cited in the Edwards case, and in addition the remarks in Edwards directed to the waiver of a constitutional right once exercised would seem to make little sense if applied only to the constitutional right of representation and not to the constitutional right to remain silent. In People v. Savory (1980), 82 Ill. App.3d 767, 403 N.E.2d 118, Justice Barry dissenting (petition for leave to appeal to Illinois Supreme Court denied, petition for writ of certiorari to the United States Supreme Court denied), this court concluded as does Edwards that once a constitutional right has been exercised the decision is not engraved in stone thereby per se prohibiting any future custodial interrogation. What we did say was that the lapse of time itself was not the significant factor but rather that waiver depended on something more than the short lapse of time and the reannouncement of Miranda rights. In this respect I believe that our decision in People v. Pleasant (1980), 88 Ill. App.3d 984, 411 N.E.2d 132, was in error although I elected to dissent from the opinion for other reasons believing them to be more important in that case. *1042 However, Pleasant is contrary to the opinion in Savory and fails to address what I consider to be the most crucial problem, namely, the waiver of a specific constitutional right which has already been exercised.
Finally, the majority seem to hold that because the police officer ceased questioning the respondent for about two hours he "scrupulously" observed the respondent's exercise of his constitutional rights. The same thing was done in Edwards and deemed unsatisfactory unanimously by the United States Supreme Court.