THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON YOUNG, Defendant-Appellant.

Second District No. 81—941

Opinion filed June 9, 1983.—Rehearing denied July 13, 1983.

456

G. Joseph Weller and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Leon Young, appeals following a bench trial from his convictions of rape, aggravated kidnaping, and unlawful restraint. (Ill. Rev. Stat. 1981, ch. 38, pars. 11—1(a), 10—2(a)(3), 10—3(a).) He was sentenced to 10 years' imprisonment. On appeal he raises the following issues for our consideration: (1) whether the trial court erred in denying his motion to suppress his confession; (2) whether reversible error was committed in conducting the hearing on the motion to suppress simultaneously with the bench trial; (3) whether defendant received the effective assistance of counsel; and, (4) whether defendant's convictions for aggravated kidnaping and unlawful restraint should be vacated as lesser included offenses of rape.

Prior to trial, defendant, age 16, filed a motion to suppress his pretrial statement on the ground that it was taken from him in violation of his fourth, fifth, sixth and fourteenth amendment rights. The motion also asked that the complaining witness' pretrial photographic identification of the defendant be suppressed on the ground that the identification was the result of an unduly suggestive procedure. By agreement of the parties, the hearing on the motion was heard simultaneously with the trial.

At approximately 8:30 a.m. on April 16, 1981, Carol Vidovich, the 17-year-old complainant, was walking near a school in Waukegan looking for Cohan Pharmacy, where she planned to apply for a job. When she reached the school area, the defendant whistled at her, told her he thought he knew her from somewhere and asked her for a cigarette. Ms. Vidovich told him he was mistaken; however, she gave him a cigarette and the two began walking and talking together. The

defendant stated he would take complainant to a place where she could meet some people from the area. He asked her whether she wanted to "get high," and complainant indicated she did. The two then walked down a ravine and into a small shed where they sat on some bricks, talked and smoked a marijuana cigarette. They engaged in certain banter which started to cause Vidovich some degree of alarm, including the defendant feigning that he was going to hit the complainant with a saw found lying in the shed. There also was some pushing and shoving to see if the complainant could get out the door. She did testify that she thought these activities were in the nature of joking around. She testified they then sat down and were talking when defendant suddenly grabbed her, threw her against the wall of the shed, and told her to remove her shirt. A struggle ensued during which defendant repeatedly hit complainant and demanded that she remove her shirt. When complainant refused, defendant grabbed her shirt, ripped it, and finally removed it. He then removed her pants, pushed her to the ground, removed his own pants, and had sexual intercourse with her. When he got up complainant was able to grab her pants and flee. She fell, cutting her foot and knee, but ultimately was able to run to a nearby house, where she telephoned the police.

Sergeant Henley and Officer Hansen arrived at the scene, and at trial Sergeant Henley described the complainant as "totally hysterical." Her blouse appeared stretched at the top and she had a large cut on the bottom of her right foot. The officers administered first aid, and complainant described her assailant and related the events leading up to and including the rape. The officers and the complainant went to the scene of the rape, where Sergeant Henley observed fresh tracks in the ravine area. He also saw the shed, and inside observed an old rusted saw, some shoes, a comb, and a pack of cigarettes and a lighter.

Isabel Ortega, testifying through a translater, and Martha Aireoles, a 13-year-old girl who was staying at Mrs. Ortega's house, testified that the complainant appeared at the house on April 16 and asked to use the telephone. Both these witnesses testified Vidovich was crying. The complainant told Aireoles that she had just been raped.

Lab reports were introduced into evidence by stipulation. Tests of vaginal smear and aspirate were positive for the presence of sperm and semen, as were tests conducted on the crotch area of Ms. Vidovich's pants. An examination of Vidovich's sweater indicated a "ragged hole" at the neck opening, and the fibers in the material showed a "downward force action."

Evidence on the motion to suppress was, by agreement of the parties, presented concurrently with the trial. Sergeant Bullock of the Waukegan Police Department testified that at approximately 2:30 p.m. on April 16, 1981, he showed Ms. Vidovich two school yearbooks, for 1979 and 1980, and two other photo albums. One photo album contained approximately 250 photos of juvenile male and female Negroes. The other contained approximately 200 photos. The complainant went through the two photo albums and was able to identify her attacker in two separate photographs. Sergeant Bullock then checked out the two photographs chosen by Ms. Vidovich and determined that defendant was the subject in both photographs. He ordered defendant to be brought into the station.

At approximately 4:15 p.m. Waukegan police officer Arthur Temp brought defendant and his mother into the station for questioning. Defendant and Officer Temp sat in an interview room, and defendant's mother and Corporal Mischikovski of the Waukegan Police Department sat in a connected room eight to 15 feet away. Defendant's mother was informed of the charges against her son, and his mother stated that defendant could not have committed the rape because he was in school at the time. She stated she had witnesses who could verify this fact. Her statements were admitted without objection by defense counsel. Another photograph was then taken of defendant, and at approximately 5 p.m. the defendant and the two officers went to another interview room down the hall where defendant was interviewed. Defendant was read his *Miranda* rights one at a time, and defendant said he understood his rights but refused to sign the rights waiver form "because his mother told him never sign anything without her being there." Corporal Mischikovski then left the room and Officer Temp asked defendant whether he had been at school that day. Defendant responded affirmatively, stating he had arrived there at 8 a.m. and left at 2:30 p.m. Defendant said he did not miss any school time that day, and thereafter told Officer Temp he did not wish to talk to him any further. Defendant's statements were also admitted without objection. It was approximately 5:15 p.m. at that time, and Officer Temp advised Corporal Mischikovski of defendant's refusal to speak. Defendant was thereafter placed in a juvenile holding cell without further questioning. Defendant never requested an attorney.

At approximately 6:30 p.m. on April 16, Corporal Mischikovski removed defendant from the holding cell and brought him back to the interview room, where he was requestioned by Sergeant Bullock. Sergeant Bullock testified that prior to requestioning he asked defendant

"if he understood the rights as they were presented to him earlier by Officer Temp." Defendant replied, "you mean the right to remain silent and stuff?" Sergeant Bullock responded affirmatively, and again asked defendant whether he "thoroughly [understood] those rights?" Defendant indicated he did and subsequently made an inculpatory statement regarding the rape. Defendant refused to sign the statement, but acknowledged that the statement was true.

Officer Mischikovski testified that he had contacted defendant's school and learned from the school principal and several other teachers that defendant did not attend his first and second period classes, the time during which the rape was alleged to have been committed. The statements of the school principal were admitted without objection. After hearing arguments on the motion to suppress, defendant's motion was denied.

Officer Hansen of the Waukegan Police Department testified as the sole defense witness. The officer arrived at the scene shortly after complainant called the police, and at trial he testified as to the events of the rape, as they were reported to him by complainant. Following Officer Hansen's testimony, defense counsel stated she did not have any other witnesses because the school people she had attempted to subpoena were on vacation.

After hearing arguments by the parties, the trial court found defendant guilty of rape, aggravated kidnaping and unlawful restraint. Defense counsel filed a post-trial motion for a new trial or for judgment notwithstanding the verdict. At the hearing on the post-trial motion, defense counsel asked for leave to withdraw from defendant's case, and a new counsel was substituted. A new post-trial motion was filed which ultimately was denied by the court. This appeal followed.

▪ ■■ Defendant first contends the trial court erred in denying his motion to suppress because his right to remain silent was not scrupulously honored and because the State failed to prove defendant knowingly and intelligently waived his rights. We disagree.

For incriminatory statements obtained as a result of a custodial interrogation to be admissible, the defendant must have been given the *Miranda* warnings, including the right to remain silent, prior to giving the statement. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) If the individual expresses in any manner prior to or during questioning a desire to remain silent, the interrogation must cease. (*Miranda; People v. Thompson* (1982), 107 Ill. App. 3d 285, 288, 437 N.E.2d 916.) However, there is no *per se* proscription of renewed questioning by and at the initiation of the police

once the person in custody has indicated a desire to remain silent. (*Michigan v. Mosley* (1975), 423 U.S. 96, 102-03, 46 L. Ed. 2d 313, 320-21, 96 S. Ct. 321, 326; *People v. Denby* (1981), 102 Ill. App. 3d 1141, 1148, 430 N.E.2d 507; *cf. Edwards v. Arizona* (1981), 451 U.S. 477, 485, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885 (*per se* prohibition of reinterrogation once defendant has invoked his right to counsel unless reinterrogation is initiated by defendant).) Rather, the admissibility of subsequent statements depends upon whether a defendant's right to terminate questioning was scrupulously honored. (*Michigan v. Mosley; People v. Denby.*) Thus, once an individual has exercised his right to remain silent, interrogation may be resumed after a complete cessation of questioning for a significant time and only if *Miranda* warnings have been repeated so as to enable the person in custody to effectively exercise his rights at the outset of the second period of questioning. (*Michigan v. Mosley; People v. Denby.*) Additional circumstances which tend to demonstrate that the defendant's right to remain silent was scrupulously honored are that a different officer conducted the second questioning and that a completely different subject matter was involved in the second questioning. (*Michigan v. Mosley.*) Finally, statements made by a defendant after being advised of his rights can be admissible if voluntarily given. (*People v. Thompson; People v. Dees* (1977), 46 Ill. App. 3d 1010, 1022, 361 N.E.2d 1126.) The voluntariness of the statement made under these circumstances is determined by considering the totality of the circumstances. *People v. Fleming* (1981), 103 Ill. App. 3d 194, 197, 431 N.E.2d 16.

Applying these principles to the instant case, we believe defendant's right to remain silent was scrupulously honored. The record shows that the initial questioning ceased immediately after defendant first asserted his right to remain silent. (*Cf. People v. Thompson* (1982), 107 Ill. App. 3d 285, 437 N.E.2d 916; *People v. Faison* (1979), 78 Ill. App. 3d 911, 397 N.E.2d 1233; *People v. Nestrick* (1977), 45 Ill. App. 3d 519, 359 N.E.2d 503.) Questioning resumed approximately 1¼ hours later, a period of time which is significant under *Mosley*, and sufficient to convey to defendant that his assertion of silence would be honored by the authorities. (See *People v. Ferguson* (1981), 102 Ill. App. 3d 702, 429 N.E.2d 1321 (one hour); *People v. Pleasant* (1980), 88 Ill. App. 3d 984, 411 N.E.2d 132 (1½ hours); *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (two hours).) Although defendant was questioned by a different officer than the one who conducted the previous interrogation, knowledge of the prior interview is imputed to the officer involved in the second inter-

view. (See *People v. Connell* (1980), 91 Ill. App. 3d 326, 332, 414 N.E.2d 796.) Defendant was also questioned about the same crime at 6:30 p.m. as he was at 5 p.m. While these two factors militate against a finding that defendant's rights were scrupulously honored, they do not alone render the second interrogation unlawful. See *In re D.W.S.* (1981), 99 Ill. App. 3d 1035, 1038, 426 N.E.2d 284; *Connell.*

The pivotal question here is whether defendant was adequately readvised of his *Miranda* rights prior to the reinterrogation. In *People v. Pleasant* (1980), 88 Ill. App. 3d 984, 411 N.E.2d 132, the Third District Appellate Court was faced with the question whether defendant was adequately reapprised when the interrogating officer asked defendant " 'if he recalled the Miranda Warnings that Officer Layman had previously read to him.' " (88 Ill. App. 3d 984, 987, 411 N.E.2d 132.) The court held this question was sufficient to give defendant an opportunity to effectively exercise his rights. (88 Ill. App. 3d 984, 988, 411 N.E.2d 132; accord, *People v. Denby* (1981), 102 Ill. App. 3d 1141, 1148, 430 N.E.2d 507, 512.) In addition, in the context of the right to remain silent, it is also generally held that renewed *Miranda* warnings are not necessary. (See *People v. Padilla* (1979), 70 Ill. App. 3d 406, 412, 387 N.E.2d 985, *cert. denied* (1980), 445 U.S. 961, 64 L. Ed. 2d 235, 100 S. Ct. 1646; *People v. Henne* (1974), 23 Ill. App. 3d 567, 572, 319 N.E.2d 596; *People v. Hill* (1968), 39 Ill. 2d 125, 131-32, 233 N.E.2d 367.) On the strength of these authorities we believe defendant was adequately reapprised of his rights. Defendant was specifically asked whether he understood the rights which had previously been read to him, and he responded that he did. Under the holding in *Pleasant* defendant was given an adequate opportunity to exercise his rights prior to reinterrogation, including the right to remain silent, if he so desired. We conclude that on the basis of this record defendant's right to remain silent was scrupulously honored. See *People v. Connell* (1980), 91 Ill. App. 3d 326, 332, 414 N.E.2d 796.

■ We also believe defendant's statements made during the reinterrogation were properly admitted into evidence. The test for admission of a confession is whether the confession was made freely, voluntarily, and without compulsion or inducement of any sort. (*People v. Lester* (1981), 102 Ill. App. 3d 761, 765, 430 N.E.2d 358; *People v. Alvarez* (1981), 93 Ill. App. 3d 111, 115, 416 N.E.2d 1217.) The test for voluntariness is whether the defendant's will was overborne at the time he made a statement. (*Lester.*) In making this determination, the trial court must consider the totality of the circumstances, including both the characteristics of the accused and the details of the interrogation. (*People v. Dixon* (1981), 102 Ill. App. 3d 426, 433, 430 N.E.2d

547; *People v. Lopez* (1981), 93 Ill. App. 3d 152, 156, 416 N.E.2d 1127.) Voluntariness need only be proven by a preponderance of the evidence, and the trial court's determination in this regard will not be disturbed on review unless it is contrary to the manifest weight of the evidence. 93 Ill. App. 3d 152, 156, 416 N.E.2d 1127.

Defendant received an adequate opportunity to exercise his right to remain silent prior to the reinterrogation. (*People v. Pleasant* (1980), 88 Ill. App. 3d 984, 411 N.E.2d 132.) Defendant indicated he understood his rights prior to the reinterrogation, and in fact mentioned the very right which he now claims was not waived. Despite his knowledge of the right to remain silent, defendant chose to speak. In addition, the *Miranda* rights were each read to defendant only 1¼ hours before, and at that time defendant expressly indicated his understanding of each right after it was read to him. Although there was some evidence that defendant was of subnormal intelligence, this fact is not dispositive of the issue of voluntariness, but is only one of the factors to be considered. (*People v. Devine* (1981), 98 Ill. App. 3d 914, 922, 424 N.E.2d 823; *People v. Hester* (1968), 39 Ill. 2d 489, 500, 237 N.E.2d 466.) Defendant's understanding of his rights as well as his ability to exercise them was demonstrated by his prior refusal to sign the waiver forms, his prior termination of questioning, and his subsequent refusal to sign the statement he made. (See *People v. Padilla* (1979), 70 Ill. App. 3d 406, 412, 387 N.E.2d 985, *cert. denied* (1980), 445 U.S. 961, 64 L. Ed. 2d 235, 100 S. Ct. 1646; *People v. Woods* (1979), 78 Ill. App. 3d 431, 442, 396 N.E.2d 1204; *People v. Fultz* (1975), 32 Ill. App. 3d 317, 338-39, 336 N.E.2d 288.) It is likely that defendant possessed this same knowledge and ability at the time he made the oral inculpatory statement. *Fultz; People v. Johnson* (1969), 112 Ill. App. 2d 148, 156, 251 N.E.2d 393.

It is also significant that prior to the statement, defendant was interrogated for only a few minutes 1¼ hours earlier. Defendant made his statement immediately after he was asked to recall the *Miranda* rights. Thus, no lengthy interrogation occurred during which defendant's will might be overborne (see *People v. Connell* (1980), 91 Ill. App. 3d 326, 332-33, 414 N.E.2d 796; *cf. People v. Savory* (1980), 82 Ill. App. 3d 767, 403 N.E.2d 118), nor did the interrogations take place in the dead of the night after defendant's sleep was interrupted. (*Cf. People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263.) Defendant was not deprived of food or drink, nor was he kept incommunicado for a long period of time. (*Cf. Haley v. Ohio* (1948), 332 U.S. 596, 92 L. Ed. 224, 68 S. Ct. 302.) We note that although his mother was not present at the time he made his statement, she did

accompany him to the station following his arrest. While it is preferable to have responsible adults present during the questioning of juveniles, their absence does not necessitate a finding of involuntariness. (See *In re D.W.S.* (1981), 99 Ill. App. 3d 1035, 426 N.E.2d 284; *People v. Lopez* (1981), 93 Ill. App. 3d 152, 416 N.E.2d 1127.) Under the circumstances of this case, it cannot be said the atmosphere of the questioning was coercive. The trial court's finding of a knowing and intelligent waiver was not against the manifest weight of the evidence and will not be disturbed on appeal. *Lopez.*

■ Defendant next contends the trial court improperly conducted the hearing on the motion to suppress simultaneously with the trial. (See *People v. McKee* (1977), 52 Ill. App. 3d 689, 367 N.E.2d 1000; *Jackson v. Denno* (1964), 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774.) Defendant claims that this procedure resulted in an unreliable determination of the voluntariness of his statement because the court also had before it the substance of the statement. (See *Jackson.*) Defendant also claims there could be no reliable determination of his guilt or innocence because the court considered in the motion to suppress evidence which was inadmissible at trial. For the following reasons, we disagree. We note initially that because defendant has challenged the competence of his trial counsel, we reach this issue despite the fact that the procedure complained of was by agreement of the parties.

The instant case is governed by the principles announced in *People v. Fultz* (1975), 32 Ill. App. 3d 317, 336 N.E.2d 288. In that case, a hearing on a motion to suppress was held in conjunction with the trial, and the defendant claimed this procedure resulted in a denial of his due process rights. The court rejected an assumption that in a bench trial the trial judge cannot make a reliable determination of voluntariness when it is also confronted with the substance of the statement. (32 Ill. App. 3d 317, 332, 336 N.E.2d 288; *cf. Jackson v. Denno* (1964), 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (holding that a jury cannot be assumed to reliably find the facts as to the voluntariness of a confession when it is also confronted with the statement's substance).) The *Fultz* court therefore reasoned that in a bench trial "there must be some indication in the record which demonstrates actual prejudice." (32 Ill. App. 3d 317, 333, 336 N.E.2d 288; accord, *People v. Fugate* (1979), 77 Ill. App. 3d 103, 105-06, 395 N.E.2d 1199.) Noting that the confession's admissibility was determined by the trial judge as an issue of law after a hearing on the motion and before the confession was admitted into evidence, the *Fultz* court concluded that no actual prejudice existed in that case.

In the instant case, the allegedly incompetent evidence of which defendant now complains is the following testimony of Officer Mischikovski: that defendant's mother told him defendant could not have committed the rape because he was in school the entire day; that the school principal told him that to the best of his knowledge defendant was not in school on that date, but that he could not be positive; that another teacher told the officer defendant was supposed to be in Mr. Jerdee's class during the first or second periods; and, that Mr. Jerdee told him defendant was not in school during those periods. Defendant claims all of this testimony was inadmissible prejudicial hearsay and was irrelevant to the issues presented in the motion to suppress.

■■ ■ We first note that at trial no objection was made with respect to the statements of defendant's mother and the school principal; nor is trial counsel's failure to object urged on appeal as a ground for defendant's claim of ineffective assistance of counsel. The propriety of admitting this testimony is therefore not before us. (*People v. Griggs* (1982), 104 Ill. App. 3d 527, 531, 432 N.E.2d 1176.) Nevertheless, we believe this testimony was properly admitted since it reflected an investigatory procedure which was entirely within the officer's personal knowledge. (*People v. Egan* (1978), 65 Ill. App. 3d 501, 511, 382 N.E.2d 477.) Further, any error which may have occurred was harmless in light of defendant's statement to Officer Temp that he was in school all day, and Officer Mischikovski's nonhearsay testimony, admitted without objection, regarding the results of his investigation into defendant's whereabouts. (*Egan.*) We also believe the results of the investigation were relevant in light of defendant's repeated references at trial to his misidentification and his statement to the police that he was in school at the time of the rape.

With respect to Officer Mischikovski's testimony that he was told by a teacher that defendant was supposed to be in Mr. Jerdee's class during the first and second periods, we note that this testimony was elicited by defense counsel on re-cross-examination. The admission of this testimony therefore cannot be urged by defendant as error on appeal. (*People v. Lester* (1981), 102 Ill. App. 3d 761, 768, 430 N.E.2d 358; *People v. Payne* (1981), 102 Ill. App. 3d 950, 959, 429 N.E.2d 1344.) Similarly, the officer's testimony regarding his conversation with Mr. Jerdee was brought out by defense counsel and, therefore, cannot be claimed as error. (*Lester; Payne.*) Further, any error in admitting the substance of the conversations was harmless in view of the officer's previous nonhearsay testimony regarding the results of his investigation.

The record in the instant case is barren of any indication that the

trial court considered incompetent evidence in reaching a decision on either the motion to suppress or the defendant's guilt or innocence. (*Cf. People v. McKee* (1977), 52 Ill App. 3d 689, 367 N.E.2d 1000.) The facts in this case were neither voluminous nor complicated, and the witnesses were few. (See *People v. Fugate* (1979), 77 Ill. App. 3d 103, 395 N.E.2d 1199.) A determination of voluntariness was made as an issue of law after a hearing on the motion to suppress and before the statement was admitted into evidence. (See *People v. Fultz* (1975), 32 Ill. App. 3d 317, 332-33, 336 N.E.2d 288.) Under these circumstances, we find that the simultaneous procedure resulted in no actual prejudice to defendant requiring reversal of his conviction. *Fugate; Fultz.*

■ Defendant next contends he was denied the effective assistance of counsel because his trial counsel failed to present probative evidence on the defendant's inability to waive his rights and failed to investigate a potential alibi defense.

In order to successfully establish incompetence of counsel, a defendant must demonstrate actual incompetence, as manifested in the performance of his or her duties as trial attorney, which resulted in substantial prejudice to the defendant without which the outcome of trial would probably have been different. (*People v. Lewis* (1981), 88 Ill. 2d 129, 153-54, 430 N.E.2d 1346; *People v. Greer* (1980), 79 Ill. 2d 103, 120-24, 402 N.E.2d 203.) The alleged incompetency must be founded upon more than the client's disagreement with counsel's choice of trial tactics or judgment. Further, substantial prejudice must be shown by more than mere speculation or conjecture on the outcome of the trial had representation been more to the defendant's liking. (*People v. Ferguson* (1981), 99 Ill. App. 3d 779, 785, 425 N.E.2d 582.) Finally, no ineffective assistance of counsel results where counsel could have acted but concluded such action would have been futile. (*People v. Johnson* (1981), 98 Ill. App. 3d 228, 232, 424 N.E.2d 610.) In such circumstances, the outcome would have remained the same. *Johnson.*

Defendant claims his trial counsel failed to present highly relevant evidence of his educational handicap and inability to read during the hearing on the motion to suppress. While it is true such evidence is relevant to defendant's ability to exercise a knowing and intelligent waiver of his rights, our reading of the record reveals that the trial court did in fact take these factors into consideration. The court, nevertheless, found under the totality of the circumstances that defendant understood and was able to exercise his rights, but chose not to do so. Thus, it is clear that the presentation of further evidence on this point would not have changed the outcome of the suppression

hearing and, therefore, cannot form the basis of a finding of ineffective assistance of counsel. *People v. Lewis* (1981), 88 Ill. 2d 129, 156, 430 N.E.2d 1346.

■ Defendant also contends his counsel's incompetence was demonstrated by her failure to investigate or prepare a viable alibi defense, despite the fact that she was advised of potential witnesses who could testify that defendant was in school at the time in question. The failure to investigate witnesses may indicate actual incompetence, particularly when the witnesses are known to trial counsel and their testimony may be exonerating. (*People v. Corder* (1982), 103 Ill. App. 3d 434, 438, 431 N.E.2d 701; *People v. Greer* (1980), 79 Ill. 2d 103, 123, 402 N.E.2d 203.) However, defendant must demonstrate that potentially favorable testimony was actually available at the time of trial (*People v. Stepheny* (1970), 46 Ill. 2d 153, 158, 263 N.E.2d 83), or that the testimony would have contradicted other testimony at trial. (*Greer.*) Conjecture does not serve as a basis for a demonstration of ineffective assistance of counsel, and where a defendant fails to indicate the nature of the omitted testimony, he has failed to prove the requisite prejudice resulting from the omission. *People v. Lewis* (1981), 97 Ill. App. 3d 982, 990, 423 N.E.2d 1157.

In the instant case, substituted defense counsel presented a post-trial motion for a new trial alleging that defense counsel knew or should have known that defendant was in school between the hours of 8:30 a.m. and 9:36 a.m., the time of the rape. In an affidavit submitted subsequent to the post-trial motion, an investigator retained by defense counsel stated that Mr. Jerdee informed him defendant was in class on the day in question, and that he (Mr. Jerdee) spoke with defendant at approximately 8:30 a.m. The investigator also stated Mr. Mack informed him that defendant reported to his second period class at approximately 9:30 a.m. According to the affidavit, no one ever discussed this case with either Mr. Jerdee or Mr. Mack prior to the affiant. Mr. Mack also submitted an affidavit on behalf of the State stating that he did not see defendant prior to 9:35 a.m. on the date in question. In addition to these affidavits, the affidavits of two juvenile detention officers were submitted which stated that original counsel never visited, conferred with, or counselled defendant prior to trial at the detention center.

It is evident that these affidavits do not establish an alibi for defendant. Assuming the facts in the affidavits are true, they establish only that defendant was seen in school at 8:30 a.m. and again at 9:35 a.m. They do not establish his whereabouts during this interim period, the period of time in which the rape occurred. (See *People v.*

*Greer* (1980), 79 Ill. 2d 103, 123, 402 N.E.2d 203.) Thus, even assuming defendant could establish that an alibi defense was not investigated he has not sustained his burden of proving prejudice as a result of such failure. Defendant's allegation of prejudice is based only upon the speculation that one of his teachers saw him in school during the crucial period. However, this allegation remains unsupported by the record and therefore cannot form the basis of a claim of ineffective assistance of counsel. (See *People v. Lewis* (1981), 97 Ill. App. 3d 982, 990, 423 N.E.2d 1157.) Further, original trial counsel stated in an affidavit that an alibi defense was considered and rejected by her because of the existence of a confession, and that defendant and his mother helped choose this course of action. It is therefore clear that the failure to present an alibi defense was a matter of trial tactics, and not the result of incompetence of counsel. (*People v. Ferguson* (1981), 99 Ill. App. 3d 779, 785, 425 N.E.2d 582.) We also note that under these circumstances the presentation of alibi evidence may have made counsel a party to perjury. The court's refusal to consider the affidavits of defendant and his mother, offered over a month after the court's ruling on the post-trial motion, is also not a basis for reversal. In the affidavits, defendant and his mother stated that original trial counsel never conferred with either of them regarding the possibility of an alibi defense. However, even if these allegations were true, defendant still has not proven prejudice as a result of the failure to confer with him regarding an alibi defense. *Lewis.*

Defendant's claim that original trial counsel did not confer with him prior to trial was contradicted by the affidavit of his original trial counsel, and thus was a question of fact for the trier of fact. The court's conclusion that adequate counselling occurred prior to trial is supported by the record and will not be disturbed. *People v. Toth* (1982), 106 Ill. App. 3d 27, 30, 435 N.E.2d 748.

■ Defendant's final contention is that his convictions for unlawful restraint and aggravated kidnaping must be vacated since these charges all arose from the same physical act, that being the rape of the complaining witness. (See *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) The State concedes that the conviction for unlawful restraint must be vacated pursuant to *King*. (See *People v. McCann* (1979), 76 Ill. App. 3d 184, 187, 394 N.E.2d 1055.) However, it contends that under *King* and its progeny, the aggravated kidnaping conviction should stand because it was not based upon the same physical act as the rape.

In *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, our supreme court held that when more than one offense arises from a se-

ries of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, multiple convictions with concurrent sentences can be entered. An "act" is intended to mean "any overt or outward manifestation which will support a different offense." (66 Ill. 2d 551, 566, 363 N.E.2d 838.) Finally, a lesser included offense, for purposes of this case, is an offense which "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged ***." Ill. Rev. Stat. 1981, ch. 38, par. 2—9.

Established case law has held that by definition aggravated kidnaping is not a lesser included offense of rape. (*People v. Miller* (1978), 58 Ill. App. 3d 1019, 1024, 374 N.E.2d 1118; *People v. Graham* (1978), 60 Ill. App. 3d 1034, 1045-46, 377 N.E.2d 179; *People v. Carroll* (1977), 49 Ill. App. 3d 387, 395, 364 N.E.2d 408.) Nevertheless we believe the convictions for rape and aggravated kidnaping in the instant case were based upon the same "act" within the meaning of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838. The record indicates that the trial court based the aggravated kidnaping conviction upon defendant's act of grabbing and throwing the complainant against the wall of the shed immediately prior to the rape. Although this act is clearly a separate "overt manifestation" than the actual rape which followed (see *King*), it is also evident that this act initiated the struggle which culminated in the rape and was designed to detain complainant in the shed for the purpose of committing the subsequent rape.

An analysis of cases dealing with the dual convictions of rape and aggravated kidnaping reveals that dual convictions are upheld under conditions substantially different from those present here. (See *People v. Miller* (1978), 58 Ill. App. 3d 1019, 374 N.E.2d 1118; *People v. Utinans* (1977), 55 Ill. App. 3d 306, 370 N.E.2d 1080; *People v. Graham* (1978), 60 Ill. App. 3d 1034, 377 N.E.2d 179; *People v. Stein* (1977), 51 Ill. App. 3d 421, 366 N.E.2d 629; *People v. Jones* (1977), 53 Ill. App. 3d 197, 368 N.E.2d 452; *People v. Carroll* (1977), 49 Ill. App. 3d 387, 364 N.E.2d 408; *People v. Richardson* (1977), 50 Ill. App. 3d 550, 365 N.E.2d 603.) In each of these cases the victim was first abducted by defendant and then detained for a substantial period of time before the rape occurred. These circumstances do not exist here.

In *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117, the court was faced with the question whether dual convictions for robbery and aggravated kidnaping could stand where the robbery occurred while the victims were being driven around 27 blocks. The

court set forth the following considerations in determining when an act of detention or asportation rises to the level of a kidnaping: " '(1) [T]he duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.' " 91 Ill. App. 3d 523, 529, 414 N.E.2d 1117, quoting *Government of the Virgin Islands v. Berry* (3d Cir. 1979), 604 F.2d 221, 227.

Applying these factors to the present case, we do not believe that defendant's act of grabbing the complainant and throwing her against the wall is sufficient in itself to sustain the charge of kidnaping, a prerequisite to aggravated kidnaping. (Ill. Rev. Stat. 1981, ch. 38, pars. 10—1(a)(1), 10—2(a).) The duration of the detention was only for the period of time necessary to accomplish the rape and, in fact, marked the beginning of the struggle culminating in the rape. It is also clear that the act relied upon was inherent in the rape itself, since at some point in time complainant had to be restrained in some manner in order to accomplish the rape. Finally, it cannot be said that this overt act created any significant danger to the victim independent of that posed by the separate offense of rape. Under these circumstances, it is our opinion that although this act was a separate overt act under *King*, it was not an act which could support the offense of kidnaping. *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838; *People v. Smith* (1980), 91 Ill. App. 3d 523, 526, 414 N.E.2d 1117.

The judgment of the circuit court of Lake County is affirmed with respect to the rape conviction. The conviction for unlawful restraint is vacated, the conviction for aggravated kidnaping is reversed, and the cause is remanded for resentencing.

Affirmed in part, reversed in part, vacated in part, and remanded.

SEIDENFELD, P.J., and NASH, J., concur.