THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK S. BRYANT, Defendant-Appellant.

Fifth District No. 5—89—0824

Opinion filed May 2, 1991.

Daniel M. Kirwan and John T. Hildebrand, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Scott Mansfield, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

Defendant, Mark S. Bryant, was found guilty by a jury of first-degree murder and was sentenced by the circuit court of St. Clair County to 80 years' imprisonment. Defendant appeals his conviction. We affirm.

Defendant originally was indicted for the murder of James Everson and for the criminal sexual assault of M.S.A. in connection with a sordid set of events beginning on the evening of June 3, 1989. According to M.S.A., she and three of her friends drove to East St. Louis that evening to purchase crack cocaine and alcohol. At their first stop, M.S.A. became acquainted with defendant and Everson, neither of whom she had ever met before. M.S.A. decided to leave the drug house with Everson and defendant instead of waiting for her friends. The three got a ride to Everson's home, where they then sat around consuming alcohol and crack. At some point, defendant decided to purchase more crack and left the house to do so. While he was gone, Everson and M.S.A. engaged in sexual intercourse. Once defendant returned, the three again partook of the drugs and alcohol. This same pattern apparently repeated itself several times that evening. Eventually defendant made known his desires to have sex with M.S.A. M.S.A. apparently was not interested. Once M.S.A. refused him, defendant left the bedroom. After watching M.S.A. and Everson from another room, however, defendant rushed in with a weed cutter and started slashing at Everson. Defendant then grabbed M.S.A., took her out in the hallway and raped her. At some point, Everson began moaning. Defendant got up, went back in the bedroom and again beat Everson repeatedly with the weed cutter. Once finished with Everson, defendant went back to M.S.A. and continued to have sex with her the rest of the night. In the morning defendant took M.S.A. to his brother's home to change clothes. Defendant and

M.S.A. then went to a liquor store to purchase wine to drink while waiting for the bus to go to St. Louis. Defendant apparently wanted M.S.A. to prostitute herself in St. Louis in order to make money to buy them both more drugs. During the ride to St. Louis, defendant and M.S.A. engaged in further sexual activity until told to stop by the bus driver. Once in St. Louis, defendant took M.S.A. to one of his relatives' residence. There M.S.A. got in a fight with the girlfriend of defendant's brother. M.S.A. struck the woman in the face with a beer bottle and robbed her of her food stamps. When the police arrived, defendant allegedly put his arms around M.S.A. and told her not to move. M.S.A. did as she was told and did not talk to the police because she believed defendant had a razor blade of some sort. After the police left, defendant escorted M.S.A. to the "stroll" area. When no one accepted M.S.A.'s "services," she called her family to get a ride back to Illinois. Eventually the son of her brother's ex-girlfriend drove defendant and M.S.A. back to her home. M.S.A. was met by her brother, who forced her out of the car, yelling at her for leaving her children alone. Defendant and the son then drove away. Later M.S.A. reported the events to a friend who drove her to the hospital. Eventually defendant heard the police were looking for him and decided to turn himself in. Defendant's version of the story coincided with M.S.A.'s for the most part up to the point of the murder and from the morning after the murder. Defendant denied committing the murder and further stated M.S.A. was a willing participant in all activities. Defendant claimed he left Everson and M.S.A. alone at Everson's house after "partying" with them, once Everson made it known M.S.A. was going to spend the night. Defendant insisted he ran into M.S.A. the next morning at the bus stop and that it was her idea to get more money for drugs by walking the "stroll" in St. Louis. Defendant suggested M.S.A. committed the murder herself to get Everson's money. The jury chose to believe M.S.A.'s version of the murder but found defendant not guilty of any criminal sexual assault.

▮▮ ▮ Defendant argues on appeal his conviction must be reversed because the evidence fails to remove all reasonable doubt he committed the murder. Defendant in particular points to substantial inconsistencies in M.S.A.'s testimony and to her unreasonable and improbable reactions after the alleged murder. While it is true that when testimony is contrary to the laws of nature or universal human experience, the reviewing court is not bound to believe the witness (see *People v. Coulson* (1958), 13 Ill. 2d 290, 297, 149 N.E.2d 96, 99), we are also mindful of the oft-repeated statement: it is not our function to retry the defendant (*People v. Collins* (1985), 106 Ill. 2d 237,

261, 478 N.E.2d 267, 277). Rather, it is the jury's responsibility to resolve any factual disputes, to assess the credibility of witnesses, and to determine the sufficiency of the evidence for a verdict of guilty. (See *People v. Bradford* (1985), 106 Ill. 2d 492, 502, 478 N.E.2d 1341, 1345.) The relevant question then is whether any rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277; see also *People v. Hendricks* (1990), 137 Ill. 2d 31, 62, 560 N.E.2d 611, 625.) We believe that standard has been met in this instance. Merely because the jury concluded M.S.A.'s testimony pertaining to the events occurring after the murder was not persuasive does not mean her entire testimony must be discarded as suspect. (See *People v. Jones* (1988), 174 Ill. App. 3d 737, 745, 528 N.E.2d 1363, 1369.) The jury was well aware of all of the alleged improbabilities and discrepancies in M.S.A.'s testimony as well as of defendant's arguments and beliefs. Having had the opportunity to observe the witnesses for itself, the jury necessarily was able to reach a more informed judgment as to defendant's guilt than we possibly can achieve from reading a cold transcript of the proceedings. (See *People v. Hernandez* (1988), 121 Ill. 2d 293, 319-20, 521 N.E.2d 25, 37; *People v. Henderson* (1976), 36 Ill. App. 3d 355, 367-68, 344 N.E.2d 239, 249-50.) We therefore cannot say in this instance the evidence is so palpably contrary to the jury's findings to raise a reasonable doubt as to defendant's guilt in connection with the murder of James Everson. See *Hendricks*, 137 Ill. 2d at 65, 560 N.E.2d at 626.

Defendant further argues on appeal he was denied effective assistance of trial counsel when counsel failed to request a mistrial after one witness informed the jury defendant had been responsible for another murder. This witness, one of M.S.A.'s girlfriends, stated in explaining on cross-examination why she did not return to the drug house in which M.S.A. was waiting:

> "She [another girlfriend] said that the person that was with us—I was talking real smart and she said the person that was with us will kill you about a two dollar bill; that he just got out of jail for murder and he was on 10 years of paper, so I didn't re-enter the house."

Defendant believes "the person that was with us" obviously referred to himself. As such the testimony was inadmissible, serving only to establish his propensity to commit violent acts against others. Defendant points out evidence of collateral crimes, crimes for which a defendant is not on trial, is inadmissible if relevant merely to estab-

lish the defendant's propensity to commit such crimes. (See *People v. Romero* (1977), 66 Ill. 2d 325, 330, 362 N.E.2d 288, 290; see also *Hendricks*, 137 Ill. 2d at 52, 560 N.E.2d at 620; *People v. Albanese* (1984), 104 Ill. 2d 504, 517, 473 N.E.2d 1246, 1251.) Defendant concludes the fact that he would "kill you about a two dollar bill" when he already was on trial for murder therefore could only serve to fatally prejudice the jury against him. In light of M.S.A.'s improbable testimony, defendant believes the witness' statement necessarily played a major role in his conviction. Consequently, defendant asserts his counsel was ineffective for failing to request a mistrial after such prejudicial evidence was improperly placed before the jury.

 █ In order to establish ineffective assistance of counsel, a defendant must show (1) that counsel committed errors " 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,' " and (2) that those errors, in fact, were prejudicial to his defense. (*Collins*, 106 Ill. 2d at 273, 478 N.E.2d at 283 quoting *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) In other words, defendant must show, but for counsel's unprofessional errors, there is a reasonable probability the outcome would have been different. (*Albanese*, 104 Ill. 2d at 525, 473 N.E.2d at 1255; see also *People v. Young* (1983), 115 Ill. App. 3d 455, 466, 450 N.E.2d 947, 957.) Substantial prejudice, however, must be established by more than mere speculation or conjecture as to the outcome of the trial had counsel performed as defendant believes he should have. (*Young*, 115 Ill. App. 3d at 466, 450 N.E.2d at 957.) We see no instance here of substantial prejudice depriving defendant of a fair trial. While it is true defendant does have a prior conviction for second-degree murder, the jury was not aware of this fact. More importantly, the witness had already mentioned numerous names of other people present in the drug house, both male and female, in recounting her version of the evening. She did not, however, refer to anyone by name in discussing her reasons for not returning to the house. It is mere conjecture to assume the jury concluded the witness was referring specifically to defendant when she stated one of the people present had just gotten out of jail for murder. In reality none of the testimony of any of the witnesses who were present that evening is particularly clear or easy to follow. Moreover, this witness' testimony pertaining to an earlier murder was never referred to again during the rest of the trial. Under such circumstances, we find it highly unlikely the jury focused on this particular piece of testimony in convicting defendant, especially in light of all the other evidence before it. In all probability the result

would have been the same; consequently, defendant was not unduly prejudiced by the witness' testimony so as to deprive him of a fair trial. We therefore need not determine whether counsel's performance in failing to request a mistrial constituted ineffective assistance. See *Albanese*, 104 Ill. 2d at 527, 473 N.E.2d at 1256.

For the aforementioned reasons, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

WELCH and CHAPMAN, JJ., concur.